IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENERGY ALCHEMY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-00815-K |
| | § | |
| MARICRUZ SAGRERO NAMBO, | § | |
| d/b/a MI DIA CAFÉ; JESUS | § | |
| SAGRERO NAMBO, d/b/a MI | § | |
| DIA CAFÉ; MARTA SAGRERO, | § | |
| d/b/a MI DIA CAFÉ, and JUAN | § | |
| SAGRERO NAMBO | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Energy Alchemy, Inc. filed this civil action against Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, Marta Sagrero, and Juan Sagrero Nambo alleging claims of trademark infringement, unfair competition, and false designation of origin. *See generally* Second Am. Compl. (ECF No. 56). Plaintiff now seeks summary judgment against Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero. (ECF No. 73). The Court has considered the motion, the briefing, the materials submitted by Plaintiff, and the applicable law. The Court finds that Plaintiff's Motion for Summary Judgment should be, and hereby is, **GRANTED in part and DENIED in part**. Accordingly, the Court **ORDERS** that Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero are permanently enjoined from using Plaintiff's "MI DIA" mark or any confusingly similar variant in connection with its

1

restaurant. The Court further ORDERS Defendants to pay Plaintiff attorneys' fees and costs.

## I.  Factual and Procedural Background

Plaintiff operates Mexican restaurants in Grapevine, Plano, and Flower Mound, Texas called "MI DIA FROM SCRATCH." Mot. 1 (ECF No. 74). It asserts that it has one registered trademark with the United States Patent and Trademark Office (USPTO) for "MI DIA" and one common law trademark for the slogan "FROM SCRATCH." *Id.* Plaintiff argues that it has used the marks "since at least 2011" for its restaurants and also uses the marks on its website, social media accounts, and other promotional materials. *Id.*

In 2022, Plaintiff learned that Defendants began using its marks for their own Mexican restaurant in Irving, Texas, as well as their website, social media pages, and promotional materials under the names "Mi Dia Café Mexican Restaurant" and "Mi Dia Café From Scratch Mexican Restaurant." *Id.*  Although Defendants apparently changed their restaurant's primary physical signage and website months after this lawsuit was filed, *see* Mot. ¶ 35, Plaintiff's claims are not moot. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 528 U.S. 167, 168 (2000). If voluntary cessation rendered a case moot, defendants could cease activity "on the eve of judgment" to moot a case, just to return

to the same activity soon thereafter. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009).



| Plaintiff's Restaurant Signage | Defendants' Restaurant Signage |
|---|---|
| Plaintiff's Website | Defendants' Website |

Mot. 6–9.

    Plaintiff's Vice President "repeatedly contacted Defendants about their infringement in an attempt to avoid litigation," even personally visiting Defendants' restaurant on multiple occasions and speaking with Defendant Maricruz Sagrero Nambo over the phone to explain Plaintiff's trademark rights. Mot. 1. Defendants refused to change their name because they "had permission to use the name from the

city of Irving." *Id.* Plaintiff then sent three cease-and-desist letters to Defendants and spoke on the phone with them again—and even offered to "give them time to change their signage and other promotional materials" as well as "pay for some of the costs associated with changing [the] restaurant signage," but Defendants again refused. *Id.* 1–2. Plaintiff asserts that Defendants' use of its trademarks was "knowing and intentional [in an] attempt[] to trade-off of the goodwill and brand recognition associated with Plaintiff's MI DIA Marks, which have been long established in the restaurant industry." *Id.* ¶ 40. Moreover, Plaintiff is aware of instances of customer confusion, as "Plaintiff has received calls from its customer regarding reservations made to Defendant[s'] restaurant, thinking that they were making reservations with Plaintiff's restaurants." *Id.* ¶ 32.

Plaintiff then filed this lawsuit against Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero (the "Original Defendants") on April 18, 2023. *See* Compl. (ECF No. 1). Despite having representation, the Original Defendants failed to timely answer or otherwise respond to Plaintiff's complaint. Mot. 2. After the Clerk eventually entered default against them (ECF No. 14), they filed a motion to set aside the entry of default (ECF No. 15), which the Court later granted (ECF No. 22). The Defendants then filed an Answer on September 21, 2023, in accordance with the Court's Order (ECF No. 23). After Plaintiff later discovered another infringer and co-owner of Defendants' restaurant, Juan Sagrero Nambo—the brother of Jesus Sagrero Nambo—Defendants purportedly fired their attorney. *See* Mot. 2. Defendants' counsel

4

filed a Motion to Withdraw (ECF No. 38), which the Court set for a hearing and ordered Defendants and all lead counsel to attend in person. *See* Mot. 2; Order Setting Hearing (ECF No. 44). Plaintiff also filed a Motion for Leave to File Second Amended Complaint (ECF No. 41). After Defendants failed to attend the hearing, the Court granted defense counsel's Motion to Withdraw (ECF No. 53), ordered Defendants to show cause for their failure to appear (ECF No. 54), and granted Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 55). Defendants subsequently failed to show cause, and the undersigned adopted the Magistrate Judge's recommendation to sanction Defendants by striking their Answer under Rules 16(f)(1) and 37(b)(2)(A)(iii). *See* ECF Nos. 72 & 73.

Plaintiff effectuated service on Defendant Juan Sagrero Nambo through substituted service on May 24, 2024 (ECF No. 69), but he similarly failed to timely answer or otherwise respond to Plaintiff's Second Amended Complaint, and the Clerk made an entry of default against him. (ECF No. 71). On October 18, 2024, Plaintiff filed the present Motion for Summary Judgment against Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero, and Motion for Default Judgment against Juan Sagrero Nambo (ECF Nos. 73 & 74), seeking entry of judgment against all Defendants on all of its causes of action: (1) trademark infringement under Section 32(1)(a) of the Lanham Act (15 U.S.C. § 1114(1)(a)); (2) trademark infringement, false designation of origin, and unfair competition under Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)); (3) trademark infringement and unfair

competition under Texas common law; and (4) trademark infringement under Tex. Bus. & Comm. Code § 16.102, *et seq*. Mot. 27, 38. Defendants never responded to Plaintiff's motion.

## II. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)).

All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins.*, 784 F.2d 577, 578 (5th Cir. 1986)). The Court cannot make a credibility determination in light of conflicting evidence or competing

6

inferences. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the Court must deny the motion. *Id.* at 250.

In deciding unopposed motions for summary judgment, a court cannot grant the motion simply because there was no opposition. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995). The burden to show the absence of a genuine issue of material fact rests on the movant, regardless of whether plaintiffs filed a response. *Id.* "Nevertheless, if no response to the motion for summary judgment has been filed, the court may find as undisputed the statement of facts in the motion for summary judgment." *Hutton v. Nationstar Mortgage LLC*, No. 3:16-CV-0266-B, 2018 WL 3392028, at *2 (N.D. Tex. July 10, 2018) (internal citation omitted). A party's *pro se* status does not excuse any failure to respond. *Cram v. La Miranda Owners Ass'n, Inc.*, 2019 WL 2436257, at *1–2 (N.D. Tex. June 11, 2019).

### III.  Analysis

### A.  Summary judgment is warranted only as to Plaintiff's claims relating to the "MI DIA" mark under the Lanham Act and Texas common law.

Plaintiff moves for summary judgment on its Section 32(1) Lanham Act claim for trademark infringement and its Section 43(a) Lanham Act claims for trademark infringement, false designation of origin, and unfair competition. Mot. 27. It also moves for summary judgment on its trademark infringement and unfair competition claims under Texas common law. Mot. 27. The same two elements apply to a trademark

infringement claim under both Section 32(1) and 43(a) of the Lanham Act. *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023). Section 32(1) creates a cause of action for infringement of registered marks; Section 43(a) creates a cause of action for infringement of unregistered marks. *Id.* (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236, n.8 (5th Cir. 2010)) A plaintiff must show (1) it possesses a legally protectable trademark, and (2) Defendants' use of that trademark "'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 450 (5th Cir. 2017) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Id.* (citation omitted). Moreover, the same elements also apply to establish a claim for false designation of origin under the Lanham Act, as well as unfair competition under 15 U.S.C. § 1125(a) and Texas common law. *Springboards to Education, Inc. v. Kipp Foundation*, 325 F. Supp. 3d 704, 718 (N.D. Tex. 2018) (Fish, J.); *Primesource Bldg. Prods., Inc. v. Hillman Grp., Inc.*, 2015 WL 11121367, at *3 (N.D. Tex. Mar. 31, 2015) (Boyle, J.) (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010)).

1.    The "MI DIA" mark is legally protectable.

Proof of registration with the United States Patent and Trademark Office (USPTO) is "prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified

goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235–36 (5th Cir. 2010); *see also Choice Hotels Int'l, Inc. v. Cheema Invs., LLC*, 2013 WL 12125998, at *3 (N.D. Tex. Feb. 20, 2013) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998)) ("Proof of the registration of a mark with the U.S. Patent and Trademark Office meets the threshold requirement that the mark be legally protectable from infringement."). Because Defendants failed to respond to the Plaintiff's motion for summary judgment, the Court considers the material facts undisputed. Here, Energy Alchemy has demonstrated that the "MI DIA" mark is registered with the USPTO and is incontestable. *See* Mot. ¶ 5; Mot. 62 (Proof of Registration). Thus, Energy Alchemy has the exclusive right to use of the registered trademark in commerce with respect to the specific goods or services. *See VPI Holding Co. v. Success Resources USA LLC*, 2014 WL 12584331, at *3 (N.D. Tex. Dec. 2, 2014) (concluding that plaintiff has a protectable interest in its marks when it provided evidence demonstrating that it owns eight valid U.S. trademark registrations for its marks and has used the marks in commerce); *Sport Supply Grp., Inc. v. Savage*, 2011 WL 1324197, at *8 (N.D. Tex. Dec. 22, 2011) (finding that the summary judgment evidence establishes that plaintiff has an ownership interest in a legally protectable mark where plaintiff presents "unchallenged prima facie evidence that the . . . mark, by virtue of its registration by the PTO, is legally protectable," and plaintiff used the mark in commerce before defendant); *Luxottica Grp. S.p.A. v. Atlantic Sunglasses LLC*, 2017 WL 6885602, at *2 (S.D. Tex. Mar. 24, 2017) (holding that plaintiffs conclusively

9

established that they own legally protectable marks when the marks were federally registered and had been in continuous use for five years).

### 2.    The "FROM SCRATCH" mark is not legally protectable.

The Court must undertake further analysis to determine whether the first element of trademark infringement is met as to Plaintiff's "FROM SCRATCH" slogan because it is not federally registered. While registration of a mark is prima facie evidence of a registrant's ownership of the mark, "[o]wnership of trademarks is established by use, not by registration." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990) (citations omitted). "The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion." *Id.* Here, the undisputed facts establish that Plaintiff has used the "FROM SCRATCH" mark "to indicate the source of [its] restaurant services since at least 2011," whereas Defendants did not begin using the mark in connection with their restaurant services until late 2021. Mot. ¶¶ 1, 12; *id.* 32. Thus, Plaintiff is the senior user.

However, the mark must also be legally protectable. A mark is protectable if it is either (1) inherently distinctive or (2) has become distinctive through a secondary meaning. *Hassel Free Plumbing, LLC v. Wheeler*, 2021 WL 1139424, at *4 (N.D. Tex. Mar. 25, 2021) (Kinkeade, J.) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)). Marks are assigned to "categories of generally increasing distinctiveness":

(1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Two Pesos, Inc.*, 505 U.S. at 768. "A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Amazing Spaces*, 608 F.3d at 241 (quoting *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790-91 (5th Cir. 1983), *abrogated on other grounds by KB Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)). "A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients." *Id.* "Arbitrary or fanciful terms bear no relationship to the products or services to which they are applied." *Id.* "A suggestive term suggests, rather than describes, some particular characteristic of the goods or services to which it applies and requires the consumer to exercise the imagination in order to draw a conclusion as to the nature of the goods and services." *Id.*

Suggestive, arbitrary, and fanciful marks "are deemed inherently distinctive and are entitled to protection" because "their intrinsic nature services to identify a particular source of a product," whereas "[g]eneric terms receive no trademark protection, [and] descriptive terms merit protection only if they have secondary meaning." *Xtreme Lashes*, 576 F.3d at 227 (citing *Two Pesos*, 505 U.S. at 768–69).

To determine the level of distinctiveness of a mark, the Fifth Circuit uses the "'imagination test,' which 'seeks to measure the relationship between the actual words of the mark and the product to which they are applied.'" *Streamline*, 851 F. 3d at 452 (citations omitted). "If a word requires imagination to apply it to the product or service

in question, it tends to show that the term as used is suggestive." *Id.* By contrast, "if a word conveys information about the product [or service], it is descriptive." *Id.* As an alternative test, courts ask "whether others in the same business would generally need the word to adequately describe their product or service." *Provident Precious Metals, LLC v. Nw. Territorial Mint, LLC*, 117 F. Supp. 3d 879, 891 (N.D. Tex. 2015) (Lynn, J.) (citing *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 848 (5th Cir. 1990)). "'Summary judgment is rarely appropriate' on the factual question of categorization" of a trademark. *Nola Spice Designs*, 783 F.3d at 538 (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 232 (5th Cir. 2009)).

The Court finds that there is an issue of material fact as to whether the "FROM SCRATCH" mark is descriptive or suggestive. Energy Alchemy makes almost no argument regarding whether its mark is descriptive or suggestive as a matter of law. Instead, it briefly concludes that the mark is "either descriptive or suggestive of restaurant services" and states that, if the Court deems the mark descriptive, it has established that it has secondary meaning due to its use in the marketplace since 2011. Mot. 32. This is insufficient to determine as a matter of law whether the "FROM SCRATCH" mark is legally protectable. *See Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, 2022 WL 20508282, at *4–5 (W.D. Tex. Dec. 21, 2022) (explaining that, "[i]f it is not self-evident which category [p]laintiff's mark falls into, there is a genuine dispute as to an element of [p]laintiff's Lanham Act infringement claim [and Texas common law and unfair competition claims] and granting summary judgment

12

for either party is inappropriate"); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 233 (5th Cir. 2009) (finding that use of the "extend your beauty" mark in conjunction with the "xtreme lashes" mark "may explain the nature of the product, weighing towards descriptiveness, [but] this is a matter best weighed by a jury after a full presentment of the evidence"); *Transparent Energy, LLC v. Premiere Marketing, LLC*, 2021 WL 6135475, at *5 (N.D. Tex. Dec. 29, 2021) (Rutherford, J.) (denying motion for partial summary judgment when "there remains a fact question as to whether the Mark, 'transparent energy,' is either at most descriptive or at least suggestive" and thus "whether or not the phrase requires some leap of the imagination for understanding" is best left to a jury); *Jones v. Am. Council on Exercise*, 2016 WL 6084636, at *20–21 (S.D. Tex. Oct. 18, 2016) (concluding there are questions of fact as to whether a term is used as a mark and whether the term is descriptive); *Luna v. City of Round Rock*, 2022 WL 4491084, at *4 (W.D. Tex. Sept. 26, 2022) (explaining that if "the moving party fails to meet its initial burden, the court must deny the motion for summary judgment" even where a plaintiff does not file a response to a motion for summary judgment).

The Court therefore **DENIES** Plaintiff's motion for summary judgment as to its claims for the "FROM SCRATCH" mark under section 43(a) of the Lanham Act and Texas common law.

### 3.    Defendants' use of the "MI DIA" mark creates a likelihood of confusion.

Thus, the Court evaluates the second element of Plaintiff's Lanham Act claim only as to Plaintiff's "Mi Dia" mark. The Fifth Circuit assesses likelihood of confusion

using the non-exhaustive list of the "digits of confusion": "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products [or services]; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). "The absence or presence of any one factor is ordinarily not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Id.* Word association between the marks is, in itself, insufficient to establish a probable likelihood of confusion. *Viacom Int'l v. IJR Capital Inv., L.L.C.*, 891 F.3d 178, 192 (5th Cir. 2018). And "the court must consider the marks in the context that a customer perceives them in the marketplace." *Id.* (internal quotations omitted). However, where a defendant uses the exact marks owned by the plaintiff, the Court is not required to analyze all the factors or "digits" of confusion because the likelihood of customer confusion is more evident. *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 310-11 (5th Cir. 2008); *see TGI Friday's Inc. v. Great Nw. Rests., Inc.*, 652 F. Supp. 2d 763, 767 (N.D. Tex. 2009).

Analyzing these factors reveals that Plaintiff has shown as a matter of law that Defendants' use of the "MI DIA" mark is likely to confuse customers seeking to dine at Plaintiff's restaurants. "The stronger the mark, the greater likelihood of confusion," *Roto-Rooter Corp. v. Garcia*, 2021 WL 327569, at *3 (E.D. Tex. Feb. 1, 2021), and Plaintiff has shown that it has operated restaurants in the DFW area using the "MI

DIA" mark since 2011, which is ten years before Defendants began using it for their restaurant in the DFW area. Mot. ¶¶ 1–12; *id.* 32. Moreover, a mark that is "incontestable" due to registration with the USPTO—as is the "MI DIA" mark—is also afforded more weight. *See Firebirds Int'l, LLC v. Firebird Restaurant Grp., LLC*, 397 F. Supp. 3d 847, 861 (N.D. Tex. 2019) (citing *Am. Rice*, 518 F.3d at 330). The marks are also virtually identical and are both used for the same service—a restaurant that serves Mexican food. *See* Mot. 4–9; *see also Streamline Prod.*, 851 F.3d at 454 (explaining that the greater the similarity between the marks and between the products or services, the greater the likelihood of confusion). The parties also have a large overlap between their respective consumers—restaurant goers in the DFW area. Mot. 1–4, 8, 33. Both Plaintiff and Defendants also both use physical signs, their respective websites, and their respective social media pages to advertise their restaurants. *Id.* Though the intent of the Defendants is not known because they did not respond to the complaint (as their Answer has been struck) or the motion, Plaintiff sent multiple cease-and-desist letters, which Defendants ignored. *See* Mot. 1. Moreover, evidence of actual confusion and care exercised by potential customers is stated in the record. *See* Mot. 10, 17; Aff. ¶¶ 14–16 (ECF No. 74-1).

Thus, as a whole, the Court finds that Defendants' use of the "MI DIA" mark creates a substantial likelihood of confusion as a matter of law. *See Ass'n of Pro. Ball Players of Am. v. Madison*, 2024 WL 5354869, at *2–3 (N.D. Tex. Nov. 18, 2024) (granting summary judgment when plaintiff's evidence shows it owns the trademarks

at issue and defendant's use of the trademarks without permission has caused confusion); *VPI Holding Co.*, 2014 WL 12584331, at *4–6 (finding that there is no evidence that creates a genuine issue of material fact regarding a likelihood of confusion when seven of the eight digits support plaintiff's position and only one digit is neutral and thus granting summary judgment on trademark infringement, false designation of origin, and unfair competition claims).

Plaintiff is therefore entitled to summary judgment on its claims for trademark infringement, unfair competition, and false designation of origin under the Lanham Act and Texas common law as to the "MI DIA" mark.

### B. Summary judgment is not warranted as to Plaintiff's claims under Tex. Bus. & Comm. Code § 16.102, *et seq.*

Plaintiff moves for summary judgment on its claim for trademark infringement under Tex. Bus. & Com. Code § 16.102, *et seq.* Mot. 27; *see* Second Am. Compl. 14 (¶¶ 63-69). However, "[c]ourts have repeatedly held that a trademark must be registered in Texas in order to maintain a cause of action under [Tex. Bus. & Comm. Code] Section 16.102." *Priority Design & Serv., Inc. v. Plaza*, 2019 WL 2124677, at *3 (W.D. Tex. May 15, 2019) (citing cases); *see also Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *7 (N.D. Tex. July 28, 2020) (Rutherford, J.) ("[S]everal courts in the Fifth Circuit have held that registration of the asserted mark with the Texas Secretary of State is an essential element of a trademark infringement claim under § 16.102."), *rec. adopted*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020). Energy Alchemy has not shown that its marks are registered with the Texas Secretary

of State. Instead, it only shows that its "MI DIA" mark is registered with the USPTO. Mot. ¶¶ 4–5. Thus, summary judgment is not proper on Plaintiff's claims for trademark infringement under Texas law. *See Transparent Energy LLC*, 2020 WL 4678438, at *7–8 (granting motion to dismiss as to plaintiff's trademark infringement claim under section 16.102 because the complaint does not allege that plaintiff's mark is registered with the Texas Secretary of State); *Vesta Corp. v. Vesta Mgmt. Servs., LLC*, 2016 WL 8710440, at *14 (S.D. Tex. Sept. 30, 2016) (granting summary judgment on a trademark claim brought under § 16.102 because the trademark was registered federally but not in Texas). As such, Plaintiff is not entitled to attorneys' fees and costs under Tex. Bus. & Comm. Code § 16.104. *See Vesta Corp.*, 2016 WL 8710440, at *15 (explaining that § 16.104 only provides relief if the mark at issue is registered in Texas).

### C.    Forms of Relief

The Court must next determine if Plaintiff's requested remedies are appropriate upon the entry of summary judgment as to its Lanham Act and Texas common law claims for the "MI DIA" mark. Plaintiff requests that the Court permanently enjoin Defendants from using its marks, award it actual damages and treble damages, and find that the case is exceptional so it can file a post-judgment motion for attorneys' fees. Mot. 33–37.

17

1.    <u>Permanent Injunction</u>

Energy Alchemy requests that the Court permanently enjoin Defendants from using their marks. Mot. 33–35. Specifically, Energy Alchemy requests that the Court enjoin:

> the aforesaid acts of trademark infringement, unfair competition, false advertising, and injury to business reputation by Defendant, its owners, executives, officers, agents, servants, employees, and attorneys, and those acting in concert with them, including related individuals and entities, affiliates, customers, representatives, suppliers, dealers, and distributors, as follows: (1) requiring them to promptly remove from their signage, websites, social media pages, and from any advertising materials, promotional materials, packaging, menus, publications, and any other displays of the MI DIA Marks or any confusingly similar names or marks; (2) prohibiting them from using or advertising any names or marks which incorporate elements of, or which are confusingly similar to, the MI DIA Marks or any confusingly similar names or marks; (3) prohibiting them from manufacturing, selling, shipping, distributing, offering, promoting, or displaying any products or services using the MI DIA Marks or any confusingly similar names or marks; (4) prohibiting them from otherwise competing unfairly with Plaintiff by trading-off Plaintiff's goodwill and business reputation or by infringing or misappropriating the MI DIA Marks or any confusingly similar names or marks; (5) prohibiting them from stating or suggesting, in any advertising materials, promotional materials, or other materials or communications, that they or their products or services are associated with, related to, approved by, or sponsored by Plaintiff; and (6) prohibiting them from injuring Plaintiff's business reputation or diluting the distinctive quality of Plaintiff's MI DIA Marks.

Second Am. Compl. 14–16.

Under 15 U.S.C. § 1116(a), the Court has the power to grant a permanent injunction when a defendant violates the Lanham Act. To obtain a permanent injunction, a plaintiff must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for

18

that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013).

The Court finds that a permanent injunction is appropriate as to the "MI DIA" trademark but not as to the "FROM SCRATCH" mark. As previously explained, the Court finds actual success on the merits as to Plaintiff's claims regarding the "MI DIA" mark, and Plaintiff has shown that it has suffered an irreparable harm to its reputation and trademarks because of consumer confusion between the marks. *See Abraham*, 708 F.3d at 627 (adopting the view of a leading treatise, that as to the first factor of the permanent injunction analysis, "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed"); *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 542 (S.D. Tex. Apr. 16, 2013) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services") (internal citation and quotation marks omitted). Second, Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendants. *See Abraham*, 708 F.3d at 627. Third, ordering Defendants to refrain from future infringement will cause them minimal to no harm. Any potential harm caused by requiring them to comply with the law is insignificant compared to the continuing

19

harm to Plaintiff's business if the injunction is not granted. *See Pengu Swim School, LLC v. Blue Legend, LLC*, 2023 WL 5598996, at *14 (S.D. Tex. Aug. 29, 2023) (concluding that "[a]ny hardship [defendant] may face from the entry of a permanent injunction is outweighed by the irreparable harm [plaintiff] is suffering" from defendant's infringement); *Roto-Rooter Corp.*, 2021 WL 327569, at *4 (finding that "requiring compliance with the law is an insignificant penalty" for infringing on plaintiff's trademark). Plaintiff has been using its trademarks in the promotion of its restaurant for almost fifteen years, whereas Defendants did not establish their restaurant until 2021. Mot. 3–6. Finally, an injunction would serve the public interest by promoting compliance with trademark law. *Arista Records, Inc. v. Kabani*, 2004 WL 88445, at *4 (N.D. Tex. Apr. 23, 2004); *see also VPI Holding Co.*, 2014 WL 12584331, at *4–6 (finding that a permanent injunction will serve the public interest in two ways—by helping prevent the public from confusing plaintiff and defendant's products, and by ensuring the enforcement of federal law).

Accordingly, a permanent injunction is an appropriate remedy upon the entry of summary judgment as to its Lanham Act and Texas common law claims relating to the "MI DIA" mark. *See, e.g., Pengu Swim School, LLC*, 2023 WL 5598996, at *14 (concluding that the record supports granting a permanent injunction); *Sport Supply Grp, Inc.*, 2011 WL 13234197, at *16 (ordering permanent injunction); *VPI Holding Co.*, 2014 WL 12584331, at *4–6 (granting summary judgment as to permanent injunction remedy for trademark infringement because all elements are met).

An injunction must be narrowly tailored to remedy only a plaintiff's specific harms. *See* Fed. R. Civ. P. 65(d). The Court finds that Plaintiff's proposed injunction against Defendants is not overly broad and merely enjoins Defendants from engaging in further infringing conduct. The Court thus grants Plaintiff's request for a permanent injunction and orders Defendants to cease utilizing Plaintiff's protected marks "or confusingly similar names or marks" in connection with its restaurants. Mot. 7. *See Tortilla Town, Inc. v. Tortilla Town, LLC*, 2022 WL 22843813, at *7–8 (W.D. Tex. Nov. 7, 2022) (finding that plaintiff's proposed injunction is "not overly broad and merely enjoins [d]efendant from engaging in further infringing conduct"); *Wearable Shoe Tree, LLC v. Does 1-601*, 2025 WL 872524, at *13 (E.D. Tex. Mar. 20, 2025) (finding permanent injunction is warranted against the defaulting defendants who committed trademark violations).

## 2.   Damages

Plaintiff requests the following actual damages: (1) $9,500 for the professional time that Plaintiff's counsel and Plaintiff's President have spent "attending to this matter at a cost of $1,900 each per day (8 hours)" and (2) $3,662.50 for "PR Firm Fees" because "Plaintiff has paid Endicott PR $662.50 for time spent on this matter as well as an estimated $3,000 in restaurant management and personnel time in dealing with the matter since 2022." Mot. 36. Plaintiff only submits the affidavit of Greg P. Minnich, Plaintiff's Vice President, as evidence of these actual damages. *Id.* 36; Aff. 1, 9 (ECF No. 74-1). Plaintiff also requests that it be awarded "three times its actual

damages under 15 U.S.C. § 1117(a)," which permits the Court to enter treble damages for any amount found as actual damages. Mot. 37, 15 U.S.C. § 1117(a).

Under the Lanham Act, a plaintiff who establishes infringement "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). "[S]uch monetary damages 'shall constitute compensation and not a penalty.'" *Streamline*, 851 F.3d at 459 (quoting 15 U.S.C. § 1117(a)). "[M]onetary damages are not warranted in trademark infringement cases if '[a]n injunction alone ... fully satisfies the equities of a given case.'" *Id.* (some alterations in original) (quoting *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000)). "This is 'particularly [true] in the absence of a showing of wrongful intent,' or if there is a 'lack of sufficient proof of actual damages.'" *Id.* (alterations in original) (quoting *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917 (Fed. Cir. 1984) and *Seatrax, Inc.*, 200 F.3d at 372). "Though the district court has discretion in determining an equitable damages award, genuine disputes concerning material facts, such as the actual amount of damages or the willfulness of infringement may still preclude a summary judgment award of damages." *Choice Hotels Intern., Inc. v. Patel*, 940 F. Supp. 2d 532, 543–44 (S.D. Tex. 2013).

The Court finds that Plaintiff has not shown it is entitled to its requested actual damages. Neither Plaintiff's motion nor Minnich's conclusory affidavit contains any specific information regarding its request for damages. Because Plaintiff has offered no

evidence that could support the award, the Court denies Plaintiff's motion as to its actual damages request. *See Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 515–16 (finding that plaintiff provided no evidence to support its request for corrective advertising damages when it "never even asserted that it plan[ned] to run corrective advertising" or provide any detail as to what the corrective advertising might consist of or cost); *Firebirds Int'l, LLC*, 397 F. Supp. 3d at 872–73 (denying plaintiff's request for summary judgment on its actual damages claim for corrective advertising costs and a reasonable royalty); *Ass'n of Pro. Ball Players of Am.*, 2024 WL 5354869, at *5 (concluding that "[p]laintiff's conclusory statements are insufficient to support its request for economic damages" when the only evidence plaintiff submitted for its economic damages was a board member's declaration that the 100th anniversary gala had to be cancelled). Consequently, the Court also denies Plaintiff's request for treble damages as to its actual damages. *See* Mot. 37; *VPI Holding Co.*, 2014 WL 12584331, at *8 ("Because the Court has already concluded that [plaintiff] is not entitled to summary judgment as to its requested monetary damages, there is no predicate for [plaintiff's] request for trebling. Accordingly, the Court denies the request as premature.").

### 3.   Attorney's Fees

Plaintiff requests that the Court find that this case is "exceptional" under 15 U.S.C. § 1117(a) and asserts that if the Court does, it "intends to file a post-judgment

motion for attorneys' fees in accordance with Federal Rule of Civil Procedure 54(d)(2)." Mot. 36, n.130.

The Lanham Act permits a prevailing plaintiff to recover its costs of action and authorizes an award of attorney fees in an "exceptional case." 15 U.S.C. § 1117(a). An exceptional case is one where "(1) in considering both governing law and the facts of the case, the case stands out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). In addition, a case may be exceptional when "the defendant's trademark infringement can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 767 (N.D. Tex. 2013) (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996) (additional internal citations omitted)). A defendant acts willfully when "he knows his actions constitute an infringement; the actions need not have been malicious. Infringement can also be willful where a defendant acted with 'reckless disregard' for or 'willful blindness' to the rights of a [plaintiff]." *Hassell Free Plumbing, LLC v. Wheeler*, 2021 WL 1139424, at *5 (N.D. Tex. Mar. 25, 2021) (citing *S & H Indus., Inc.*, 932 F. Supp. 2d at 767). Additionally, ignoring a cease-and-desist letter can constitute willful and deliberate conduct. *See Chevron Intellectual Prop., L.L.C. v. Allen*, 2009 WL 2596610, at *3–4 (N.D. Tex. Aug. 24, 2009).

Here, Defendants engaged in willful conduct and they have failed to appear. Defendants were apprised of Plaintiff's trademark rights multiple times before the lawsuit began, and they ignored three different cease-and-desist letters and continued using the "Mi Dia" mark in connection with its restaurant serving Mexican food. *See* Mot. 1–2, 11–17. Therefore, this is an "exceptional case" for the purpose of attorney's fees under the Lanham Act, and award of such fees is warranted. *See Sport Supply Grp, Inc.*, 2011 WL 13234197, at *15 (finding that "the circumstances surrounding [d]efendants' infringement of [plaintiff's] trademark are sufficiently 'exceptional' to warrant an award of attorneys' fees" because "the undisputed summary judgment evidence indicates that [d]efendants willfully and intentionally infringed" plaintiff's trademark); *S & H Indus., Inc.*, 932 F. Supp. 2d 754, 767 (concluding that plaintiffs have shown this is an exceptional case and thus are entitled to reasonable attorney's fees under 15 U.S.C. § 1117(a) because defendant "was clearly apprised of [p]laintiff's rights in the Mark and the Logo in writing . . . [and] [n]otwithstanding notice that [p]laintiff held the registrations for both marks, and a demand that he cease and desist from infringing activities, [d]efendant continued to use the Mark" and did not offer any "reasonable legal defense which would be indicative of his good faith").

## IV.  Conclusion

In conclusion, the Court **GRANTS IN PART and DENIES IN PART** Energy Alchemy's Motion for Summary Judgment (ECF No. 73). Specifically, the Court: (1) denies Energy Alchemy's motion as to its claim for trademark infringement under Tex.

Bus. & Comm. Code § 16.102 and requested relief under § 16.104; (2) denies Energy Alchemy's motion as to its Lanham Act and Texas common law claims for the "FROM SCRATCH" slogan; (3) grants Energy Alchemy's motion as to its Lanham Act and Texas common law claims for the "MI DIA" mark; (4) grants Energy Alchemy's motion as to its request for a permanent injunction regarding the "MI DIA" mark under 15 U.S.C. § 1116(a) and a finding that this is an "exceptional" case that warrants attorney's fees under 15 U.S.C. § 1117(a); and (5) denies Energy Alchemy's motion as to its request for actual damages and treble damages.

The Court **ORDERS** that Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero are permanently enjoined from using Plaintiff's "MI DIA" trademark or any confusingly similar variants in connection with its restaurant business. Specifically, Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero must promptly remove from their signage, websites, social media pages, and from any advertising materials, promotional materials, packaging, menus, publications, and any other displays of the "MI DIA" mark or any confusingly similar names or marks. Defendants Maricruz Sagrero Nambo, Jesus Sagrero Nambo, and Marta Sagrero are also prohibited from using or advertising any names or marks which incorporate elements of, or which are confusingly similar to, the "MI DIA" mark or any confusingly similar names or marks; prohibited from manufacturing, selling, shipping, distributing, offering, promoting, or displaying any products or services using the "MI DIA" mark or any confusingly similar names or marks; prohibited from otherwise

26

competing unfairly with Plaintiff by trading-off Plaintiff's goodwill and business reputation or by infringing or misappropriating the "MI DIA" mark or any confusingly similar names or marks; prohibited from stating or suggesting, in any advertising materials, promotional materials, or other materials or communications, that they or their products or services are associated with, related to, approved by, or sponsored by Plaintiff; and prohibited from injuring Plaintiff's business reputation or diluting the distinctive quality of Plaintiff's "MI DIA" mark.

Plaintiff shall submit the appropriate documents supporting its fees and costs within fourteen days of the date of this Memorandum Opinion and Order.

**SO ORDERED.**

Signed September 10th, 2025.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE

27